James Acosta (035876)
QUILLING, SELANDER, LOWNDS,
WINSLETT & MOSER, P.C.
6900 N. Dallas Parkway, Suite 800
Plano, Texas 75024
Telephone: (214) 560-5455
Facsimile:  (214) 871-2111
jacosta@qslwm.com
*Counsel for Trans Union LLC*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James Troy,<br><br>          Plaintiff,<br><br>v.<br><br>Equifax Information Services, LLC,<br>Trans Union, LLC, and<br>Jefferson Capital Systems, LLC,<br><br>          Defendants. | Case No. 2:20-cv-01447-SPL<br><br>**DEFENDANT TRANS UNION LLC'S REPLY IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS AND MEMORANDUM OF LAW IN SUPPORT** |

COMES NOW, Defendant Trans Union LLC ("Trans Union") and files its Reply to Plaintiff's Response (ECF No. 56) to Trans Union's Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) ("Motion"), and would respectfully show the Court as follows:

### I. ARGUMENT AND AUTHORITIES

**A.  CRAs are Required to Continue Reporting Dispute Notations Where the Consumer Failed to Contact the Data Furnisher Directly to Have the Notation Removed**

Plaintiff's argument that the unanimous decisions granting Motions to Dismiss from Northern District of Georgia courts *only* apply to data furnishers is incorrect. ECF No. 56 at 10-12. Recently, courts faced with this very question have held that a consumer's failure to notify the data furnisher directly that a dispute notation should be removed required the CRAs to continue to report the notation. *See Carol Jones v.*

1

*Equifax Info. Servs., LLC, et al.,* No. 2:20-cv-00253-RWS, ECF No. 34, (Report and Recommendation Granting Defendants' Motion to Dismiss) (N.D. Ga. June 14, 2021) (Plaintiff's failure to contact the data furnisher directly to have the dispute notation removed required the notation to continue to be reported by the CRAs); *see also Drummond v. Equifax Info. Servs., LLC, et al.,* 5:20-cv-013620-DAE, ECF No. 59 (Order Granting CRA Defendants' Motion to Dismiss) (W.D. Tex. July 14, 2021); *Griffin v. Equifax Info. Servs., LLC, et al.,* 1:20-cv-02316-CCB, ECF No. 65 (Non-Final Report and Recommendation) (N.D. Ga. July 21, 2021); *Jordan v. Equifax Info. Servs., LLC, et al.,* 3:20-cv-00199-TCB-RGV, ECF No. 68 (Non-Final Report and Recommendation) (N.D. Ga. July 21, 2021).[1]  These recent opinions are a logical extension of the reasoning of this Court, and others, holding that a dispute notation remark can only be removed if the consumer directly contacts the data furnisher.  *Roth v. Equifax Info. Servs., LLC*, No. 2:16-cv-04235-JWS, 2017 WL 2181758, at *3 (D. Ariz. May 17, 2017); *Veda White v. Wells Fargo Bank, N.A., et al.*, No. 1:20-cv-1870-LMM-AJB, ECF No. 37 (N.D. Ga. February 17, 2021); *Foreman v. Equifax Solutions, LLC*, No. 1:20-cv-01871-TCB-WEJ, ECF No. 57 at 8 (N.D. Ga. November 10, 2020) (Report and Recommendation Granting Credit Control Services, Inc.'s Motion to Dismiss); *Antonette Griffin v. Equifax Info. Servs., LLC, et al.*, No. 1:20-cv-2316-TWT-CCB, ECF No. 50 (N.D. Ga. Jan. 25, 2021) (Non-Final Report and Recommendation Granting Furnisher Defendants' Motions to Dismiss); *Briscoe v. Equifax Info. Servs., LLC, et al.*, No. 1:20-cv-02239-WMR-CMS, ECF No. 44 (N.D. Ga. Oct. 27, 2020) (Report and Recommendation Granting Motion to Dismiss), *report and recommendation adopted*, ECF No. 58; *Hardnett v. Equifax Info. Servs., LLC*, No. 1:20-cv-03017-LMM-RDC, ECF No. 45 at *11-13 (N.D. Ga. Dec. 16,

---

[1] Two of these recent decisions, *Griffin* and *Jordan*, attempt to draw an erroneous distinction based on whom the consumer initially lodged the dispute with – the data furnisher or a CRA. Not only have multiple courts disregarded this distinction as immaterial, the text of the FCRA solidifies it is of no import.  The text of 15 U.S.C. § 1681s-2(a)(3) makes clear that the burden of adding a dispute notation is placed on the data furnisher after it is informed directly by the consumer that the information provided is disputed.  The statute does not contemplate the dispute notation being added by a CRA without receiving such a notation from a data furnisher.  Because of this fact, it is illogical to suggest that the distinction matters; the dispute notation can only be added by the data furnisher and, consequently, can only be removed by the data furnisher.

2020) (Report and Recommendation Granting Credit Collection Services, Inc.'s Motion to Dismiss); *Fisher v. Equifax Info. Servs., LLC, et al.*, No. 1:20-cv-2852-SDG-CMS, ECF No. 46 (N.D. Ga. Jan. 22, 2021) (Non-Final Report and Recommendation Granting Furnisher Defendants' Motions to Dismiss)*; McGee v. Equifax Info. Servs., LLC*, No. 1:18-cv-04144-MHC-CMS, 2019 WL 2714505, at *2 (N.D. Ga. Mar. 19, 2019), *report and recommendation adopted*, 2019 WL 2714497 (N.D. Ga. Apr. 9, 2019).

Plaintiff, in his Response, fails to cite to even one piece of authority standing for the proposition that CRAs, rather than data furnishers, are required to remove dispute notations. Instead, Plaintiff's meandering Response criticizes the opinions cited above specifically holding that CRAs should not be required to do so; yet, ironically, provides no authority in support.

To hold that a CRA is required to remove a dispute notation, without being directed to do so by the furnisher, would effectively allow data furnishers to escape liability while, also, placing a new, unilateral and independent obligation on CRAs that is not contemplated by the FCRA. Further, Plaintiff's erroneous suggestion that he would be without recourse is without merit. While there are a myriad of other ways Plaintiff could seek to hold data furnishers accountable, such an argument is not one the court is required to answer, as it is better left to Congress. Plaintiff cannot attempt to create liability for Trans Union out of fear there is no other recourse, nor can courts rescue plaintiffs from perceived shortcomings in the law as written by reading obligations into the law that do not exist. *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 476 ("The controlling principle in this case is the basic and unexceptional rule that courts must give effect to the clear meaning of statutes as written."). Based on the well-reasoned case law cited herein, Plaintiff's Complaint should be dismissed, with prejudice.

**B.    Plaintiff Relies on Unpersuasive Authority to Suggest Formulaic Recitation of Elements is Enough**

As Trans Union detailed in its Motion, the Ninth Circuit has held that, "[w]hile all material allegations must be taken as true, "conclusory allegations without more are

3

insufficient to defeat a motion to dismiss for failure to state a claim.'" *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988). Rather, Plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

According to Plaintiff, he need only "alleg[e] that Trans Union failed to conduct reasonable investigations of Plaintiff's disputes and failed to correct the inaccurate tradelines." ECF No. 56 at 5. As to why Plaintiff's unadorned claims should survive Trans Union's Motion, Plaintiff simply recites the elements required to state an FCRA claim, satisfying his self-fulfilling prophecy. *Id.*

Under the standard set forth in *McGlinchy v. Shell Chem. Co.*, Plaintiff's allegations against Trans Union fail to state a claim for relief. Plaintiff's chief mistake is in construing the FCRA to require CRAs to ensure that a dispute notation reflects the consumer's then-current subjective assessment of the tradeline, as opposed to the objective historical fact of the prior dispute. Here, Plaintiff's later decision to attempt to remove his dispute notation does not change the fact that he disputed the tradeline in the first place, or that his Complaint failed to allege the inaccuracy of that historical fact[2] and provides nothing "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," which is insufficient to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678. Because Plaintiff failed to meet his burden here, Trans Union requests the dismissal of Plaintiff's Complaint, with prejudice.

**C.    *Wheeler* is Distinguishable and of Little Persuasive Value**

Plaintiff almost exclusively relies on a single case to suggest the issue regarding the removal of a dispute notation has already been decided. ECF No. 56 at 5-6; *Wheeler v. Trans Union, LLC*, No. 17-cv-3328, 2018 WL 2431876 (D. Ariz. May 30, 2018). Critically, *Wheeler* failed to address Trans Union's argument that it does not have an

---

[2] To be clear, Trans Union does not concede that Plaintiff's "dispute" of the tradeline, and subsequent "un-dispute" of the tradeline, is anything but an attempt at manufacturing an inaccuracy, promoted by Credit Repair Lawyers of America, to extract a settlement from defendants, as noted by Magistrate Salinas in *Briscoe*. *Briscoe*, No. 1:20-cv-02239-WMR-CMS, ECF No. 44 (N.D. Ga. Oct. 27, 2020).

obligation to remove a dispute notation unless told to do so by the furnisher, as supported by the decisions of the courts who *have* faced this issue.  In fact, the entire analysis in *Wheeler* focused almost exclusively on Trans Union's argument that its procedures were reasonable.[3]  *Id.* at *3-4.  Simply put, Plaintiff's reliance on *Wheeler* is misplaced.

Hanging his hat on *Wheeler*, Plaintiff's Response fails to recognize that Trans Union's Motion in this case makes no argument to suggest the Complaint failed to allege its procedures were unreasonable.  Rather, Trans Union's arguments centered on this Court's holding in *Roth,* that "[because] Plaintiff never directly told RSI that he no longer disputed the debt…RSI is required under [the] FCRA to retain that dispute status.  RSI cannot be liable for both reporting Plaintiff's account as disputed and not reporting it as disputed."  *Roth*, 2017 WL 2181758, at *3.  Rather, "[i]f a consumer does not directly tell the furnisher that it no longer disputes the debt, the FCRA requires the furnisher to retain that dispute status pursuant to 15 U.S.C. § 1681-s2(a)(3)."  *Veda White*, No. 1:20-cv-1870-LMM-AJB, ECF No. 37 at 5 (citing *McGee*, No. 1:18-cv-04144-MHC-CMS, 2019 WL 2714505, at *2; *see also Briscoe*, No. 1:20-cv-02239-WMR-CMS, ECF No. 44. *Wheeler* does not stand for any alternative proposition and, for this reason, is of little persuasive value, and Plaintiff's Complaint should be dismissed, with prejudice.

**D.      Trans Union Does Not have a Unilateral Obligation Regarding Dispute Notations**

Plaintiff next attempts to suggest that Trans Union argues it is free to simply "ignore" a consumer's dispute regarding a dispute notation.  ECF No. 56 at 6-8.  Such an argument not only misconstrues Trans Union's position, but woefully misses the mark.

Trans Union, as mandated by 15 U.S.C. § 1681(i), is required to reasonably reinvestigate information disputed by a consumer, but is not required to remove a dispute notation if requested to directly by the consumer.  To hold otherwise would not only read into the statute an obligation that does not exist but, equally as important, make it

---

[3] The *Wheeler* decision also thoroughly analyzed Trans Union's argument that the plaintiff failed to sufficiently plead damages; however, for the purpose of Trans Union's instant motion, this analysis is irrelevant as Trans Union did not raise this deficiency in its motion.

impossible for Trans Union to maintain compliance with 15 U.S.C. § 1681c(f). Section 1681c(f) *requires* CRAs to report dispute notations reported by data furnishers. Plaintiff's attempt to differentiate the source of the dispute notation, as noted by the court in *Foreman,* relying heavily on this Court's holding in *Roth*, is a distinction without a difference. *Foreman*, No. 1:20-cv-01871-TCB-WEJ, ECF No. 57 *report and recommendation adopted*, ECF No. 69 ("In reply, CCS argues that this distinction [whom the consumer originally disputed the tradeline with] is immaterial. The undersigned agrees. As the Complaint is written, plaintiff never directly told CCS that she no longer disputed the debt, and therefore it was required under the FCRA to retain that dispute status. Under the plain language of § 1681s-2(a)(3), if a consumer disputes any information then the furnisher may not furnish information to any CRA without notice that the information is disputed. Thus, Plaintiff's failure to notify the furnishers directly that she no longer disputed the tradeline is fatal under the logic of *McGee* and *Roth*.").

Regardless of how the dispute notation is first added, the FCRA mandates its continued reporting unless, and until, the consumer directly notifies the data furnisher it no longer wishes for the notation to be reported. Plaintiff not only failed to cite to even a single authority standing for the contrary proposition, but also made no attempt to meaningfully address this Court's opinion in *Roth.* For this reason alone, Plaintiff's Complaint should be dismissed, with prejudice.

**E.    Dispute Notations are Not Subject to Reinvestigation Pursuant to the FCRA, 15 U.S.C. § 1681(i)**

As set forth in Trans Union's Motion, the FCRA consistently treats Plaintiff's dispute notations as distinct from the "item[s] of information" that can otherwise be disputed through the CRAs. ECF No. 53 at 7-10. Trans Union included in its Motion at least five examples from the FCRA's statutory text to support its view, along with a recent Report and Recommendation from Magistrate Regina Cannon ("R&R") that reached the same conclusion. *Id*. (citing *Hardnett*, No. 1:20-cv-03017-LMM-RDC, ECF No. 45).

Plaintiff responded by ignoring Trans Union and Magistrate Cannon's contextual reading of the FCRA, instead asserting that this distinction is "non-existent" and has been created "out of thin air." ECF No. 56 at 13. According to Plaintiff, the CRAs must reinvestigate "any item of information," and the FCRA "does not exclude certain types of information from 'any item of information.'" *Id.* Tellingly, while dismissing out of hand Trans Union's arguments, Plaintiff provides no support for his expansive reading of the FCRA. Nor does Plaintiff challenge the numerous examples in the FCRA indicating that a dispute notation is treated differently from "the underlying personal information subject to the consumer's dispute." *Hardnett*, No. 1:20-cv-03017-LMM-RDC, ECF No. 56 at 13. Instead, Plaintiff launches into an overzealous rebuke of Magistrate Cannon's decision in *Hardnett* and criticizes the opinion as unfounded – all without offering any authority to support his contrary position.

Of course, Trans Union does not disagree that the FCRA includes the phrase "any item of information." 15 U.S.C. § 1681i(a). But that single phrase does not tell the whole story, and Plaintiff's emphasis on those four words alone does not withstand scrutiny when the language is read in context. As Trans Union explained, a dispute notation is not information *on the consumer*, such as a data furnisher's report that the consumer missed a payment. Rather, a dispute notation is a discretely generated entry, by the data furnisher, that Trans Union must maintain according to separate provisions of the FCRA. 15 U.S.C. § 1681c(f).

Because the FCRA recognizes a distinction between account information and a dispute notation, Plaintiff has failed to plead that Trans Union violated the FCRA. Therefore, Plaintiff's Complaint should be dismissed, with prejudice.

**F.     Dispute Notation Disputes are Not "Simple"**

As outlined above, Plaintiff's legal theory would create a myriad of problems for both furnishers and CRAs. Plaintiff attempts to sidestep these intricate problems by recasting Trans Union's obligations as "simple." ECF No. 56 at 14. But, Plaintiff concedes, as he must, that numerous cases have already held "that a *furnisher* does not

violate 15 U.S.C. § 1681s-2(b) of the FCRA if the consumer does not directly notify the furnisher of the dispute of the inaccurate dispute status." *Id.* at 14.  Plaintiff's theory, therefore, would place upon CRAs a new and independent statutory obligation to remove dispute notations upon receipt of indirect disputes that are based on the consumer's then-subjective assessment of the tradeline, without regard to the data furnisher's statutory obligation to continue reporting those same notations.  Such inconsistencies and problems with Plaintiff's theory are neither "simple" nor supported by statute.

Plaintiff's interpretation, if adopted, would only serve to create an "administrative headache" accompanied by unprecedented and "significant penalties" for the CRAs. *Hardnett*, No. 1:20-cv-03017-LMM-RDC, ECF No. 45 at *13.  Under Plaintiff's theory, if "a dispute notation were indeed the type of information protected by the FCRA, a consumer might then file a dispute regarding a credit account on Monday, a second dispute regarding the first dispute on Wednesday, and a third dispute regarding the second dispute on Friday." *Id*.  Given that numerous courts have now held that a furnisher has no obligation to remove a dispute notation unless notified directly by the consumer (*see supra* at 9-10), it is especially unclear "what a CRA . . . is to do under the hypothetical just presented, nor what a bank or other credit report end user is to make of the result." *Id*.  When taken to its logical conclusion, it is clear that Plaintiff's argument would result in an "unseemly, self-referencing regression" for CRAs, thereby undermining the FCRA's purpose of "promoting efficiency in the banking system." *Id.* at *14 (citation omitted).

Plaintiff's argument also conveniently ignores the only solution that is actually "simple" – have consumers contact furnishers directly to have the dispute notations updated or removed.  It was "entirely within Plaintiff's power to inform [each furnisher] directly that [he] no longer disputed its tradeline or debt and wanted the 'account in dispute' notation removed." *Briscoe*, 1:20-cv-02239-WMR-CMS, ECF No. 44 at *21.  Instead, Plaintiff chose to manufacture an "inaccuracy" in his credit report "by first 'disputing' and then 'un-disputing' certain tradelines," with no explanation,

documentation, or facts to support his change of heart. *See id*. n.7. Trans Union should not bear the brunt of Plaintiff's self-inflicted problems, or attempts to extract a settlement, in the form of unprecedented and unsupported statutory liability.

**G.     Plaintiff's Barebones Allegations Fail to Sufficiently Allege a Willful Violation**

A CRA "willfully" violates the FCRA only where its "reading of the statute . . . [is] objectively unreasonable." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007). An interpretation is objectively unreasonable only if it lacks a "foundation in the statutory text" or if "authoritative guidance . . . from the courts of appeals or the Federal Trade Commission . . . might have warned it away from" the challenged conduct. *Id*. at 69–70.

Plaintiff fails to even allege what Trans Union's policy was, much less how or why it was objectively unreasonable, necessitating his willfulness claims fail as a matter of law. However, assuming he has, this cannot save his willfulness claims. Based on the case law and authority cited herein, Trans Union cannot be held liable for a violation that does not exist. And, equally important, Plaintiff identified no appellate case law or regulatory guidance establishing that CRAs are required to remove dispute notations unilaterally.

Here, Plaintiff has neither alleged nor asserted any of the required elements of his willfulness claims. Further, not only has Plaintiff failed to allege that Trans Union had a practice or policy that was objectively unreasonable in light of the FCRA's statutory language, but he has also failed to allege how Trans Union ran a risk of violating the FCRA that was substantially greater than the risk associated with a reading that was merely careless. *Safeco*, 551 U.S. at 58–59. To be clear, *all* Plaintiff has alleged is the word "willful" in lieu of the word "negligent." *Compare* ECF No. 1 at ¶¶ 45-47 *with* ECF No. 1 at ¶¶ 52-54. Such a barebones pleading cannot be deemed sufficient to sustain a willful violation. Accordingly, the Court can, and should, grant Trans Union's motion to dismiss as to Plaintiff's willfulness claims.

## IV. **CONCLUSION**

Based on the foregoing arguments and authority, Trans Union Motion for Judgment on the Pleadings should be granted and Plaintiff's Complaint should be dismissed in its entirety with prejudice as to Trans Union.

Respectfully submitted,

*/s/ James Acosta*
James Acosta (035876)
QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, P.C.
6900 Dallas Parkway, Suite 800
Plano, Texas 75024
Telephone: (214) 560-5455
Facsimile: (214) 871-2111
jacosta@qslwm.com
***Counsel for Trans Union LLC***

10

# CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of July 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Trinette G. Kent
tkent@kentlawpc.com
Kent Law Offices
3219 E. Camelback Road, Suite 588
Phoenix, AZ 85018
(480) 247-9644
(480) 717-4781 Fax
  *and*
Gary Hansz
gary.hansz@crlam.com
Credit Repair Lawyers of America
22142 W Nine Mile Rd.
Southfield, MI 48033
(248) 353-2882
(248) 353-4840 Fax
*Counsel for Plaintiff*

*/s/ James Acosta*
James Acosta